## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| ZACH HILLESHEIM and MELANIE DAVIS,<br><br>　　　　*Plaintiffs*,<br><br>v.<br><br>KANEKO; and 1111 JONES STREET, LLC,<br><br>　　　　*Defendants* | Case No. _____<br><br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiffs Zach Hillesheim and Melanie Davis, by and through the undersigned counsel, brings this action against Kaneko, a Nebraska non-profit corporation, and 1111 Jones Street, LLC, a Nebraska limited liability company, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

### INTRODUCTION

1.　　Plaintiffs bring this civil rights action against Defendants for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities.

2.　　Defendants own and operate the art museum known as "Kaneko", which to the extent it was constructed and first occupied after January 26, 1993 or was altered after January 26, 1993 was required to be designed and constructed to be readily accessible to persons with disabilities. To the extent "Kaneko" was not constructed or altered before January 26, 1993, Defendants were required to remove barriers to access to the extent

barrier removal was readily achievable. "Kaneko" contains architectural barriers to accessibility.

3.      The violations alleged in this complaint occurred at "Kaneko", located at 1111 Jones St, Omaha, NE 68102.

4.      Defendants' failure to provide equal access to "Kaneko" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

5.      Defendants' conduct constitutes an ongoing and continuous violation of the law.

6.      Accordingly, Plaintiffs seek a declaration that Defendants' facilities violate federal and an injunction requiring Defendants to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiffs further request that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

7.      Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

8.      Venue in this judicial district is proper because Defendants are located and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

9.      Plaintiffs Zach Hillesheim and Melanie Davis are residents of the city of Omaha, Nebraska.

10.     Plaintiffs suffer from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiffs are therefore members of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq*.

11.     Plaintiff Hillesheim was paralyzed as an infant while undergoing surgery to address a congenital heart defect. During the surgery, his spine was severed, paralyzing him below the waist. Mr. Hillesheim cannot walk and uses a wheelchair for mobility. As a person with a disability, Mr. Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

12.     Plaintiff Melanie Davis suffers from, and all times relevant hereto has suffered from, Cerebral Palsy, a condition that substantially limits her ability to walk. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

13.     Defendant Kaneko, a Nebraska nonprofit corporation, is the operator and lessee of the real property and improvements which are the subject of this action, the art museum known as "Kaneko", a place of public accommodation within the meaning of the ADA, located at the street address of 1111 Jones St, Omaha, NE 68102.

14.     Defendant 1111 Jones Street, LLC, an Nebraska limited liability company, is the owner and lessor of the real property and improvements which are the subject of this action, the art museum known as "Kaneko", a place of public accommodation within

the meaning of the ADA, located at the street address of 1111 Jones St, Omaha, NE 68102.

## FACTUAL BACKGROUND

15.     On March 13, 2018 Plaintiffs attempted to patronize the art museum known as "Kaneko" in Omaha, Nebraska. Plaintiffs went to "Kaneko" to attend an art exhibit.

16.     When Plaintiff drove to "Kaneko" they found 6 total parking spaces in the customer parking lot and 1 parking space reserved for persons with disabilities.

17.     This 1 reserved parking space was not reserved as a van parking space, lacked an adjacent access aisle, and was reserved through signage posted low to the ground.

18.     An image in Exhibit A to this Complaint depicts the reserved parking space at Kaneko.

19.     Inside "Kaneko", Plaintiff Hillesheim found that the men's restroom toilet stall opened into the clearance near the toilet, making it difficult to navigate within the stall in his wheelchair.

20.     An image in Exhibit B to this Complaint depicts the men's restroom at Kaneko.

21.     Plaintiff Davis found that the women's restroom was difficult to open due to the weight of the door.

22.     Plaintiff Davis also found that the accessible stall in the women's restroom did not have a door with a lock to provide privacy.

23.     The women's restroom mirror was situated too high for Plaintiff Davis to see herself when seated in her wheelchair.

24.     A photograph in Exhibit C to this Complaint depicts the mirror in the women's restroom.

25.     Plaintiff Hillesheim attempted to assist Plaintiff Davis in the family restroom, but the floor was sloped to the point Plaintiff Davis's wheelchair rolled away when she made a transfer to the toilet.

26.     Plaintiffs found that the trash cans in the family restroom and the women's restroom stall were foot operated, difficult to reach, and difficult to open by hand.

27.     Plaintiffs found that a wooden stool occupied the area around the toilet, blocking the area needed for a transfer.

28.     Plaintiffs found that a toilet seat cover dispenser obstructed the area over the grab bar, making a transfer difficult.

29.     Images in Exhibit D to this Complaint depict the issues encountered by Plaintiffs in the Kaneko family restroom.

30.     Plaintiffs discussed these issues with "Kaneko" employees.

31.     In light of the architectural barriers at "Kaneko", Plaintiffs are deterred from visiting "Kaneko" in the future. Plaintiffs intend to return to "Kaneko", but these architectural barriers deter them from doing so. They plan to return and patronize "Kaneko" when they learn that the premises have been made fully accessible to persons who use wheelchairs for mobility.

32.     Plaintiffs are residents of Omaha, Nebraska, and they plan to continue visiting local Omaha museums and venues in the future.  They would enjoy being able to patronize "Kaneko".

33.     Plaintiffs attempted to access Defendants' premises but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendants' premises. As a result of Defendants' non-compliance with the ADA, Plaintiffs cannot independently access the

facilities and/or are excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

34.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a.  Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c.  Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

   d.  Individuals with disabilities continually encounter various forms of discrimination; and

   e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

35.     Congress explicitly stated that the purpose of the ADA was to:

    a.  Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c.  Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

36.     Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

37.     The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

38.     Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26,

1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

39.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

40.     In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

41.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

42.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

43.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

44.     The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

45.     Defendants have discriminated against Plaintiffs on the basis of their disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Kaneko". A specific, though not exclusive, list of unlawful physical barriers and

- 8 -

ADA violations present at "Kaneko" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a.  "Kaneko" had 6 total parking spaces but had 0 parking spaces reserved for persons with disabilities, in violation of ADAAG 208.2. Plaintiffs use wheelchairs for mobility and require compliant accessible parking to park and transfer to their wheelchairs safely.

    b.  "Kaneko" had 0 van parking spaces, in violation of ADAAG 208.2.4 and 502.

    c.  The sign reserving the parking space reserved for persons with disabilities was situated lower than 60 inches above the ground, in violation of ADAAG 216.5 and 502.6. Low or missing signage creates the risk of someone inadvertently parking in the reserved parking space, makes it difficult to find accessible parking, and hampers the ability of law enforcement to enforce parking rules and regulations.

    d.  The parking space reserved for persons with disabilities lacked an adjacent access aisle, in violation of ADAAG 502.2. Plaintiffs use wheelchairs for mobility and require adjacent access aisles to make safe transfers between their vehicle and the customer parking lot.

    e.  The toilet stall door in the men's restroom at "Kaneko" opened into the clearance around the toilet, in violation of ADAAG 213.2, 602.3, and 604.3.1). Plaintiff requires clearance to position himself for a transfer and to close the stall door.

    f.  The women's restroom door required more than 5 lbs. of force to open, in violation of ADAAG 213.2, 206.2.2, and 404.2.9.

g.  The lower edge of the reflective surface of the mirror in the women's restroom was situated higher than 40 inches above the floor, in violation of ADAAG

h.  The family restroom had slopes steeper than 1:48 near the toilet, in the turning space, and in the maneuvering clearance on the bathroom side of the doorway, in violation of ADAAG 206.2.2, 213, 402.4.4, 603, and 304.2.

i.  The family restroom garbage receptacles were foot-operated with no hand-operated alternative, in violation of ADAAG 205, 309.4, and 603. Plaintiffs cannot use their feet to operate waste bins.

j.  The family restroom had a toilet seat cover dispenser installed lower than 12 inches above the side wall grab bar, in violation of ADAAG 609.3. Plaintiffs require access to the side wall grab bar to make a safe transfer between their wheelchairs and the toilet.

k.  The family restroom had a wooden stool positioned in the clearance around the toilet, in violation of ADAAG 604.3.2. Plaintiffs require sufficient clear space to make a safe transfer without falling, damaging their wheelchairs, or damaging other property.

46.  The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiffs or which exist at "Kaneko". To qualify as an accessible parking structure, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502. To qualify as an accessible toilet facility, the toilet facility

- 10 -

must be located on an accessible route and must qualify with the technical provisions of the ADAAG, including but not limited to the requirements for lavatories, grab bars, doors, clearance, clear floor space, fixtures, mirrors. ADAAG Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and Chapter 6.

47.    In order to fully remedy the discriminatory conditions, Plaintiffs require an inspection of "Kaneko" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

48.    Compliance with the ADA standards, and the ADAAG is required by 42 U.S.C §§ 12182 and 12183 to the extent the facility was designed and constructed or altered after January 26, 1993, and the violations to the ADAAG requirements are not a result of compliance being structurally impracticable. 28 C.F.R § 36.401(a)(1).

49.    In the alternative, to the extent any architectural elements were constructed prior to that date, compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendants due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

50.    Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduc-

tion for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

51.     As persons with disabilities, Plaintiffs have a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

52.     Without injunctive relief, Defendants' failure to remove accessibility barriers will continue to cause injury to Plaintiffs, who will continue to be unable to independently access "Kaneko" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of their rights under the ADA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.***

53.     Plaintiffs incorporate and realleges the above paragraphs.

54.     Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

55.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

- 12 -

56.     Defendants have discriminated against Plaintiffs and others in that they failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiffs have been denied full and equal access to "Kaneko" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

57.     Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the ADA and ADAAG are ongoing.

58.     Defendants have failed to remove architectural barriers to full and equal access by Plaintiffs, even though removing the barriers was required and is readily achievable.

59.     Plaintiffs plan to visit "Kaneko" again in the near future. Plaintiffs are without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm upon their planned return visit to "Kaneko" unless and until Defendants are required to remove the physical barriers to access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

60.     This Court has authority under 42 U.S.C. § 12188 to grant Plaintiffs injunctive relief, including an order requiring Defendants to make "Kaneko" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Kaneko" until such time as Defendants cure the access barriers.

61.   Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and are entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiffs respectfully request:

   a.  Plaintiffs demand a trial in Omaha, Nebraska.

   b.  That the Court issue a Declaratory Judgment that determines that Defendants' facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

   c.  That the Court award nominal damages.

   d.  That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendants from continuing their discriminatory practices; including an order directing Defendants to remove all barriers to the maximum extent feasible or in the alternative make all readily achievable alterations to their facilities so as to remove physical barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

- 14 -

e.  That the Court award Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

f.  That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.


DATED:  March 29, 2018

/s/ Padraigin L. Browne
Padraigin L. Browne (MN Bar # 389962)
Browne Law LLC
8530 Eagle Point Blvd, suite 100
Lake Elmo, MN 55042
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805